UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>CLARE HOUSE BUNGALOW HOMES, L.L.C.,<br>             Debtor.<br><br>CLARE HOUSE BUNGALOW HOMES RESIDENTS ASSOCIATION,<br>             Plaintiff,<br>vs.<br>CLARE HOUSE BUNGALOW HOMES, L.L.C., a Washington limited liability company, et al.,<br>             Defendants. | No. 09-04651-PCW11<br><br><br><br>Adv. No. 09-80164-PCW11<br><br><br>MEMORANDUM DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPECTIVE JOINDERS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

      This adversary arose from a state court law suit against Clare House Bungalow Homes, L.L.C. (hereinafter "Clare House") and various entities which hold liens or Deeds of Trust on the real estate of Clare House. The state court complaint seeks a determination that the interests of the members of the plaintiff association who are residents of the 24 of 28 living units owned and managed by Clare House are superior to the interests of the defendants. The state court action was a classic quiet title action and sought to restrain the foreclosure sale then pending by defendant Caudill Living Trust, which holds a Deed of Trust on the real property (hereinafter "Caudill Deed of Trust"). Counterclaims were filed by Caudill Living Trust which alleged that the actions of the plaintiff association and its members constitute slander of title and that the filing of the Lis Pendens on the real property records at the time of commencement of the state court action was wrongful. It seeks damages on those counterclaims.

MEMORANDUM DECISION RE: . . . - 1

Clare House filed a Chapter 11 bankruptcy proceeding on August 20, 2009 under case No. 09-04651-PCW11 and the state court quiet title action was removed to this court. That bankruptcy proceeding was dismissed on April 13, 2010, but Clare House commenced a second chapter 11 proceeding on June 10, 2010 under case No. 10-03507-PCW11. The debtor's proposed plan is not yet confirmed. None of the defendants in this adversary have sought to lift the automatic bankruptcy stay. Jurisdiction exists under 28 U.S.C. § 1334(b) as the real estate involved in the controversy constitutes property of the bankruptcy estate.

The pending motion for summary judgment (Docket No. 88) and joinders (Docket Nos. 95 and 98) brought by the defendants simplistically allege their interests are superior to those of the members of the plaintiff association. The plaintiff association's cross motion for summary judgment (Docket No. 101) alleges that its members hold interests superior to those of the defendants.

Clare House is best described as a senior living facility. Residents must be 55 or older to occupy the individual units. Each unit is the subject of a Resident Agreement. The terms of the individual Resident Agreements generally provide that upon occupancy the Resident pays a lump sum for the right to occupy the premises until death, at which time some percentage of that lump sum is returned to the Resident's estate. The lump sum paid and the percentage of the amount returned varies from unit-to-unit and some of the terms within the agreements, which terms are not material to resolution of these motions, vary. Resolution of the current issues requires an interpretation of the standard provisions of the Resident Agreements.

The Caudill Deed of Trust and the Deeds of Trust or liens of the other named defendants were recorded or arose after two of the Residents recorded their Resident Agreements with the Spokane County Auditor's Office in the public real estate records. Those are Residents Raun and Hoffman. None of the other Resident Agreements were recorded.

Several legal issues are presented in the pending motions.

1. Do the individual members of the plaintiff association have standing to maintain this action, i.e., do they have an interest in real property?

2. Does the plaintiff association have standing to maintain this action?

3. If the Residents have an interest in real property, is that interest superior to the interest

MEMORANDUM DECISION RE: . . . - 2

of the defendants?

4. Did the commencement of the quiet title action constitute slander of title?

5. Was the filing of the Lis Pendens wrongful?

## **INTEREST IN REAL PROPERTY**

The resolution of the issues in the case cannot be addressed until the underlying issue of the nature of the rights of the members of the plaintiff association [or "Residents"] has been resolved. Defendants maintain that the individual residents who are members of the association do not have a property interest that will provide the Residents (either individually or through the plaintiff association) standing to bring this lawsuit. Defendants further argue that the lack of a property interest also prevents the Residents from prevailing on their claim to quiet title. Defendants argue that the attributes of property ownership, i.e., the right to possess and enjoy property and the right to exclude others, does not imbue the Residents with title or ownership of property, and lacking a title or ownership interest, the Residents lack standing to sue. Before addressing the issue of standing, and indeed before addressing various other issues in the current motion, the nature of the interest granted in the Resident Agreements must be determined.

1. <u>The right to occupy is an interest in real property</u>.

The pivotal issue in this case is whether the Resident Agreements grant the Residents a real property interest. The Resident Agreement on page 1 states "[r]esident's right to occupy the Unit is the subject of this Agreement." Clare House is obligated to make the specific unit available for the exclusive occupancy of each specific Resident and common areas available for non-exclusive use so long as the Resident qualifies for occupancy such as by paying monthly utility and other fees. Paragraph 9 of the Resident Agreement states:

> So long as Resident shall fulfill all of his/her obligations under this Agreement, Resident shall be entitled to the full right of occupancy together with such other rights as are stated in this Agreement. However, nothing in this provision or elsewhere in this Agreement shall be construed as creating or acknowledging an interest in real property in favor of Resident.
>
> (a) This Agreement and the Resident's interest as it is described in this Agreement, at Clare House's option, shall be subordinate to any mortgage, deed of trust, or any other hypothecation for security now or hereafter placed upon the real property of which the Premises are a part and to any advance(s) made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof.

MEMORANDUM DECISION RE: . . . - 3

> Notwithstanding such subordination, Resident's right to occupy the Unit shall not be disturbed so long as Resident shall pay fees, observe and perform all of the provisions of this Agreement.
>
> (b) Resident specifically agrees, upon written request by Clare House, that Resident shall execute and deliver to Clare House any documents of subordination and/or attornment required by Clare House or otherwise necessitated as a condition of project financing or otherwise; failure of the Resident to do so shall constitute a material breach of this Agreement; PROVIDED FURTHER, however, that in the event of Resident's continuing failure to execute any required documentation evidencing subordination and/or attornment ten (10) days following written demand, Resident does hereby make, constitute and irrevocably appoint Clare House attorney-in-fact in Resident's name, place and stead, to execute any and all documents of subordination and/or attornment. This appointment is coupled with an interest.

The Resident Agreement terminates upon the death of the Resident or upon certain other conditions not relevant to this controversy, such as the failure to pay utility fees. Upon termination of the Resident Agreement, the Resident must surrender possession of the unit. Paragraph 3 of the Resident Agreement provides that "[u]pon termination of this agreement, . . . Resident shall receive" a specific percentage of the initial Occupancy Fee paid by the Resident.

Do the rights granted the Residents in the Resident Agreement constitute an interest in real property or merely contract rights which are personal property rights? It is hornbook law that the exclusive right to occupy and possess real property is a fundamental property right. 72 C.J.S. *Property* § 2 (2010).

Real property carries with it a bundle of rights and one of the fundamental rights in that bundle is ownership. Another fundamental right in that bundle of rights is the right to possession and enjoyment of the property. When a written contract grants the right of possession of real property, the contract grants a real property interest. The right to possession may be temporary, it may be subject to certain conditions, and it may be inferior to other rights in the bundle, but it is an interest in real property. Manufactured Housing Communities of Washington v. State, 142 Wn.2d 347, 13 P.3d 183 (2000).

In this situation, the Resident Agreement contains a statement to the effect that it cannot be construed as creating an interest in real property. Since it concerns the person's right to occupy real property, what other kind of interest could it be creating? Could the parties to a Deed of Trust add a

MEMORANDUM DECISION RE: . . . - 4

sentence stating that the Deed of Trust cannot be construed as creating an interest in real property and then argue that no property interest has been granted? Such a result would be absurd and contrary to decades of real property law. Just as labeling a transaction as a "lease" does not change the inherent sale nature of the transaction, stating that a contract does not grant an interest in real property cannot change the inherent nature of the contract. Labels cannot change the true nature of the underlying principal that occupancy is a property right.

    2.    <u>The right to a payment is not an interest in real property</u>.

The real property interest consists of the right to occupy and the right of possession. That right terminates upon the death of the Resident. Conceptually, this is similar to a life estate in real property which terminates upon the death of the grantee. Like a life estate, the Resident Agreement does not grant all the rights in the bundle of property rights, but only certain rights. Paragraph 12(b) of the Resident Agreement provides that it shall terminate upon "[t]he death of the Resident(s), (in the case of married persons, this agreement shall terminate on the death of both Residents)."

The obligation to reimburse a percentage of the Occupancy Fee initially paid by the Resident which obligation is set forth in Paragraph 3 arises only "[u]pon termination of this Agreement . . . ." In other words, the right to occupy, which is the property interest granted in the Resident Agreement, expires upon the death of the Resident. After expiration of the real property interest, there remains in the Resident Agreement an obligation to pay money. That obligation is not an interest in real property. It does not arise until after termination of the real property interest. It is a contractual obligation enforceable by the parties to the contract, but which is unrelated to the then no longer existing property right.

## **STANDING**

Defendants have raised two issues as to the plaintiff association's standing to appear and be heard in this proceeding. The first is whether the individual Residents have a sufficient property interest to demonstrate standing, and the second is whether the association can qualify as an association to represent the individual Resident's interests collectively in this proceeding. Having determined that the Residents have an interest in real property, each resident would have standing to bring an action to quiet title. Where one has a valid interest in the real estate and the right to take possession of the property,

MEMORANDUM DECISION RE: . . . - 5

one has a valid subsisting interest in the property. Duckworth v. Michel, 172 Wash. 234, 19 P.2d 914 (1933).

The standing issue then to be addressed is whether the plaintiff association has standing to bring suit on behalf of its members.

> An association has standing to bring suit on behalf of its members when the following criteria has been satisfied: 1) the members of the organization would otherwise have standing to sue in their own right; 2) the interests that the organization seeks to protect are germane to its purpose; and 3) neither claim asserted nor relief requested requires the participation of the organization's individual members.

International Ass'n of Firefighters, Local 1789 v. Spokane Airports, 146 Wn.2d 207, 45 P.3d 186 (2002).

In the case before the court, each Resident was granted the right of possession and the right to exclude others pursuant to the terms of the Resident Agreements. As that Agreement grants a property interest to each member of the plaintiff association, the first element of the criteria is satisfied. The second element is also satisfied as the Declaration of John R. Zeimantz (Docket No. 109) states that the plaintiff association was created for the express purpose of defending the rights and interests of the Residents in this litigation, which satisfies the second element. Finally, none of the individual Residents have appeared in this litigation in their individual capacity, nor do they need to so appear. A quiet title action that involves property with a common interest to many persons may be brought by one, where it is impracticable to bring all before the court. Wm. D. Perkins & Co. v. Diking Dist. No. 3 of Island County, 162 Wash. 227, 298 P. 462 (1931). An association composed of such persons may also appear in such an action.

## **SLANDER OF TITLE COUNTERCLAIM**

Defendants seek summary judgment on the counterclaim for slander of title. RCW 7.28.010 states that "[a]ny person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county . . . ."

Clearly under the Resident Agreement, the members of the plaintiff association have an exclusive right to possession of their specific units and the non-exclusive rights of use of the common areas. That right of possession is statutorily sufficient to commence a quiet title action. The statute grants them authority to commence a quiet title action.

MEMORANDUM DECISION RE: . . . - 6

To prevail on a claim for slander of title, the claimant must demonstrate evidence which meets four elements: (1) the statements made by the members of the plaintiff regarding their interest in the property were false; (2) the statements that they held an interest in real estate superior to the interest of the defendants were made maliciously; (3) the statements were made in connection with a pending or prospective conveyance of the real property; and (4) the claimant suffered some pecuniary loss resulting from the statements.

In this situation, there is no dispute that the Residents have the right to possession. The members of the plaintiff association alleged in their complaint that not only do they have the right of possession, but also that they hold an interest in the real property which is legally and equitably superior to those of the defendants. This is the statement that the defendants allege is false. Even assuming this court had determined that the Residents do not hold an interest in real property, the second element necessary to slander of title cannot be met.

The court in <u>Brown v. Safeway Stores, Inc.</u>, 94 Wn.2d 359, 617 P.2d 704 (1980) at page 375 stated:

> Malice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity. The initiation of litigation to determine the rights of the respective parties to a lease cannot, without more, be characterized as malicious conduct. (Citations omitted.)

There is no evidence that the plaintiff association brought the quiet title action maliciously or through any improper motive. Under the circumstances of the situation, it is apparent that a bonafide dispute existed as to the nature of the rights of the Residents and the priority of those rights vis-a-vis the defendants.

## **WRONGFUL RECORDING OF A LIS PENDENS**

The defendants also allege a counterclaim and damages based upon the fact that the plaintiff association recorded contemporaneously with the commencement of the quiet title action a notice of lis pendens. Such a document is merely notice to the world that litigation exists which may affect title to or rights in the real property. Such documents may be filed by lien holders, receivers or others claiming an interest in the real property who are parties to litigation concerning that real property. RCW 4.28.320 and .328.

MEMORANDUM DECISION RE: . . . - 7

Even assuming that the plaintiff association's contention that it held an interest in the real estate had been proven incorrect, the plaintiff association had substantial justification for recording the lis pendens. Indeed, when a party to litigation concerning rights in real property fails to file a lis pendens, there is a risk that a bonafide purchaser or someone dealing in the property will obtain rights superior to the litigant due to the failure to file a lis pendens. 57 AM. JUR. 2D *Lis Pendens* § 3 (2010).

## **PRIORITY OF INTERESTS**

As the members of the plaintiff association hold a property interest, the issue then becomes one of priority. As between the Residents and defendants, who holds the superior interest? Should one of the defendants foreclose its Deed of Trust or lien, what rights, if any, of the Residents would be inferior and thus be terminated by a foreclosure?

1. <u>Rights of those Residents who recorded their agreements</u>.

Having determined that the members of the plaintiff association acquired interests in real property pursuant to the Resident Agreement, the question then becomes one of priority. Are the interests of the Residents superior to the property interests held by the defendants pursuant to their Deeds of Trust and liens? The answer to this question requires a distinction between the Residents who recorded their Resident Agreement in the real property records and those who did not.

Washington law provides for the recording of interest in real property in the office of the County Auditor in which the real property is located. Generally, unrecorded conveyances of an interest in real property are void as to any later purchaser or entity encumbering the property. RCW 65.08.070; <u>Ellingsen v. Franklin County</u>, 117 Wn.2d 24, 810 P.2d 910 (1991). A proper recording of a document in the real property records is notice to the world of the conveyance of that particular property interest. Any later person dealing with the bundle of rights associated with that real estate has notice of the conveyance contained in the recorded document and takes subject to it. Essentially, if one has notice of another's interest in real property, one takes an interest which is inferior to the other person's interest.

All of the defendants acquired their interest in the real property under the applicable Deed of Trust or lien after December 20, 2001 and March 21, 2002, which were the dates of the respective recording of the Resident Agreements of Raun and Hoffman. Thus, the interests of all defendants are inferior to the real property interests of those two Residents, which real property interests are the right

MEMORANDUM DECISION RE: . . . - 8

to occupancy and possession.

2. <u>Rights of Residents who did not record their agreements</u>.

Recording under RCW 65.04 and .08 is not the exclusive manner of providing notice of an interest in real property. Actual notice could be given to a third party or more typically, circumstances may exist which give rise to constructive notice. In this controversy, the members of the plaintiff association argue that the defendants had actual knowledge of the occupancy of the units by the Residents and knew that the real property was used as a senior living facility. Under Washington law, knowledge of occupancy of real property by someone other than the owner of the property gives rise to a duty to inquire. That knowledge requires some inquiry into the circumstances giving rise to the occupancy. <u>Scott v. Woolard</u>, 12 Wn. App. 109, 529 P.2d 30 (1974), <u>Glaser v. Holdorf</u>, 56 Wn.2d 204, 352 P.2d 212 (1960) and <u>Nichols v. De Britz</u>, 178 Wash. 375, 35 P.2d 29 (1934).

Evidence has not yet been presented as to the actual knowledge of each particular defendant at the time that defendant's interest in the property arose. Nor has evidence been presented as to what inquiries, if any, were made by each defendant. Undoubtedly, issues of material fact exist as to the circumstances surrounding each defendant's knowledge at the relevant time. The determination of whether any defendant had constructive notice of the interest in real property held by the Residents, including the effect of the recording of the two Resident Agreements, must await trial.

Thus, the conclusion is that the right to occupy and possess held by Residents Raun and Hoffman is superior to the interests of the defendants. As to the right to occupy and possess held by other Residents, the priority of those interests vis-a-vis each defendant must be determined at trial.

3. <u>Did all Residents subordinate their interests to defendants</u>?

As stated above, the Resident Agreement contains a provision in paragraph 9(b) which requires Residents to execute written agreements subordinating their interest to any creditor or third party at the request of Clare House. No such request was ever made to any Resident. No written subordination agreements exist, and there was no duty on the part of any Resident to execute such an agreement as the prerequisite request was not made.

The defendants argue that pursuant to subsection (a) of paragraph 9, no such separate written agreements were necessary as the terms of the Resident Agreement itself subordinated the interests of

MEMORANDUM DECISION RE: . . . - 9

the Residents to later interests such as the defendants. The first sentence of (a) does state that the interests of the Residents "shall be subordinate to any mortgage, deed of trust . . . ." However, the second sentence then states that "[r]esident's right to occupy the Unit should not be disturbed . . . ." By agreeing to this provision, the Residents subordinated some rights to Deed of Trust holders, but that subordination was limited as the Residents' right to occupancy continued and survived the subordination. The right to occupancy was not affected by the subordination as it was not "disturbed."

## CONCLUSION

The plaintiff association's Motion for Summary Judgment (Docket No. 101) is **GRANTED IN PART** to the extent it determines that the Resident Agreements granted an interest in real property to the Residents. That interest is the exclusive right to occupy and use the particular unit of each Resident and the non-exclusive right of use of the common areas. The right to receive a monetary sum which arises after termination of the property interest is a personal contract right. Those real property interests of Residents Raun and Hoffman who recorded their agreements in the real property records are superior to the rights of the defendants. As to the other Residents, the priority or superiority of their rights vis-a-vis the defendants must be determined at trial.

The defendants' Motion for Summary Judgment (Docket No. 88) seeking dismissal of the plaintiff association's causes of action must be **DENIED** as is the defendants' request for an award of damages and attorney fees based upon the counterclaims of slander of title and wrongful filing of a lis pendens. Said counterclaims must be **DISMISSED**.

*/s/ Patricia C. Williams*
Patricia C. Williams
Bankruptcy Judge

12/14/2010 14:59:17

MEMORANDUM DECISION RE: . . . - 10